UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ) | CIVIL ACTION |
| ) | No. 96-10804-DPW |
| LIBERTY MUTUAL INSURANCE COMPANY, ) | No. 1:04-CV-10648-DPW |
| ) | [Abarca Bostik] |
| Plaintiff, ) | No. 1:04-CV-10649-DPW |
| ) | [Alwell Asbestos] |
| ) | No. 1:04-CV-10668-DPW |
| v. ) | [Maritime Asbestos] |
| ) | No. 1:04-CV-10669-DPW |
| THE BLACK & DECKER CORPORATION, ) | [Maritime Hearing Loss] |
| BLACK & DECKER, INC., BLACK & DECKER ) | No. 1:04-CV-10676-DPW |
| (U.S.) INC., EMHART CORPORATION, and ) | [Pennsylvania Benzene] |
| EMHART INDUSTRIES, INC., ) | No.1:04-CV-10670-DPW |
| ) | [Medway] |
| Defendants. ) | No. 1:04-CV-10665-DPW |
| ) | [PAS Fulton] |
| | No. 1:04-CV-10675-DPW |
| | [PAS Oswego] |

BLACK & DECKER'S SUPPLEMENTAL MEMORANDUM IN SUPPORT
OF ITS MOTION FOR AN AWARD OF PREJUDGMENT INTEREST
AND ATTORNEY'S FEES REGARDING ABARCA BOSTIK, ALWELL
ASBESTOS, MARITIME ASBESTOS, MARITIME HEARING LOSS,
PENNSYLVANIA BENZENE, MEDWAY, PAS FULTON AND PAS OSWEGO

INTRODUCTION

In March, 1998, after two years of litigation, Black & Decker sought summary judgment concerning inter alia, the duty of Liberty Mutual to defend five long-term exposure ("LTE") claims ("Five LTE Claims")[1] and to comply with its prior agreement to indemnify and defend Black & Decker in connection with three environmental claims ("PAS/Medway

---

[1] These claims are Abarca Bostik (No. 1:04-CV-10648-DPW), Alwell Asbestos (No. 1:04-CV-10648-DPW), Maritime Asbestos (No. 1:04-CV-10668-DPW), Maritime Hearing Loss (No. 1:04-CV-10669-DPW), and Pennsylvania Benzene (No. 1:04-CV-10676-DPW).

Claims").[2]  In response Liberty Mutual acknowledged its duty, but made no attempt to pay the money it owed for another four years.  Liberty Mutual is not entitled to seek an adjudication on a claim it admits had no merit, delay payment for four years and pay interest at less than the statutory rate.

In those circumstances, Black & Decker is entitled to entry of judgment based on the pleadings[3] and other filings in the full amount of the claim, plus prejudgment interest and attorney's fees (less a credit for the tardy payment of principal).  It is entitled to the prejudgment interest under Massachusetts law, or applicable state law statutes.  With respect to the claims under insurance policies as to which Massachusetts and Connecticut law applies, it is entitled to recovery of attorney's fees in establishing the duty to defend.  An award limited to the lost time value of money based on the post-judgment interest rate is inadequate fully to compensate Black & Decker.  In such a case, Liberty Mutual would reap a windfall and Black & Decker would suffer a loss.  The post-judgment interest rate is based on the rate at which the United States government borrows funds, not the rate Liberty Mutual earns on its investments or the rate Black & Decker must pay on borrowed funds.  As a matter of public policy, limiting interest to the post judgment interest rate would encourage insurers to delay payment of claims where liability is clear.  The clear policy behind the statutory rate is to encourage prompt settlement of claims.

## BACKGROUND

The pertinent facts, summarized in prior submissions, including Black & Decker's memorandum dated April 16, 2004, are set forth in the timeline below.

---

[2]   These environmental claims are Medway (No.1:04-CV-10670-DPW), PAS Fulton (No. 1:04-CV-10665-DPW) and PAS Oswego (No. 1:04-CV-10675-DPW).

[3]   The cause of action alleged in a pleading speaks as of the date of the pleading and the parties are entitled to an adjudication as of that date.  See Fed.R.Civ.P.3, 13, 15.

- January 2, 1996:        Liberty Mutual commences this action

- March 31, 1996:         Liberty Mutual serves complaint

- April 24, 1996:         Black & Decker files counterclaim

- February 9, 1998:       Black & Decker moves for summary judgment

- February 9, 1998:       Liberty Mutual admits obligation to defend LTE claims and environmental claims

- Jan. 1998-Jan. 2002:    Black & Decker presents invoices; Liberty Mutual does not make any payment

- January 30, 2002:       Black & Decker moves to supplement counterclaim to allege that failure of Liberty Mutual to honor its payment obligations on all claims violates Chapter 93A

- February, 12, 2002:     Liberty Mutual issues checks paying principal owed on the Five LTE Claims

- February 14, 2002:      Liberty Mutual opposes motion to supplement on basis that it has paid outstanding principal

- January 6, 2003:        Black & Decker notices Rule 30(b)(6) deposition of Liberty Mutual regarding non-performance of agreement to pay costs regarding environmental claims

- March 28, 2003:         Rule 30(b)(6) deposition held and Liberty Mutual brings checks to deposition

- April 4, 2004           Joint Status Report states only outstanding issue regarding PAS/Medway Claims is effect of late payment and failure of Liberty to pay balance on PAS Oswego site

- April 21, 2004          Liberty Mutual pays balance regarding PAS Oswego site.

This chronology demonstrates that Liberty Mutual delayed honoring its payment obligations for the Five LTE Claims and the PAS/Medway Claims, as long as possible. The unsupported assertion in the Liberty Mutual April 16, 2004 memorandum that, after having had the invoices in its possession for years, Liberty Mutual reviewed the invoices found them

3

reasonable and just happened to pay them two days before its opposition to the motion to supplement was due is not a reasonable inference in view of the chronology. As the Court stated in a decision concerning other summary judgment motions, the party opposing summary judgment is not entitled to unreasonable inferences (December 5, 2003 Order at 111). Nor is it reasonable to infer that Liberty Mutual just happened to pay the principal balance on the PAS/Medway invoices on the day of a Rule 30(b)(6) deposition on that very issue.

## ARGUMENT

### A.    Judgment Was Inevitable Based On The Summary Judgment Record

Liberty Mutual has admitted in various pleadings, most importantly in its filings on summary judgment in 1998, that it does not dispute Black & Decker's right to a defense on the Five LTE Claims and to defense and indemnification costs in connection costs with the PAS/Medway Claims. At pages 1-2 of its own summary judgment motion, filed on February 9, 1998, Liberty Mutual admitted that it had assumed an obligation to pay defense costs in connection with the Medway claim and defense costs in connection with the two PAS claims (attached as Exhibit A). At pages 85-86, 88 of its opposition to Black & Decker's summary judgment motion, Liberty Mutual Insurance admitted that it was obligated to defend the Five LTE Claims and the PAS/Medway Claims (attached as Exhibit B). On that record, Black & Decker is entitled to judgment on this issue.

It is likely that judgment did not enter only because Liberty Mutual had so complicated this action, in furtherance of what the Court recognized as Liberty Mutual's "idea … to bring a big case and have it sink in the muck" (October 22, 1996 Status Conference at 11-12, attached as Exhibit C). Black & Decker should not suffer any detriment due to the four year delay in entering judgment on an undisputed record.

Had judgment entered, Black & Decker would have been entitled to prejudgment interest, pursuant to M.G.L. c. 231, § 6C. That statute provides:

> In all actions based on contractual obligation, upon a verdict, finding or order for judgment for pecuniary damages, interest shall be added by the clerk of the court to the amount of damages, at the contract rate, if established, or at the rate of twelve percent per annum from the date of the breach or demand.

The mere fact that Liberty Mutual paid the principal balance prior to entry of judgment on a pending summary judgment motion as to which it had admitted its liability does not allow it to avoid paying prejudgment interest on the amount due. As Judge Tauro stated in Pacific Insurance Co. v. Eaton Vance Management, 260 F. Supp. 2d 334, 346 (D. Mass 2003) "there is no reason [the insurer] should be able to avoid prejudgment interest merely by paying the disputed amount before the court issues a judgment as to damages", rev'd in part & vacated in part on other grounds, 369 F.3d 584 (1st Cir. 2004) This is because, as Judge Tauro correctly noted, "the goal of prejudgment interest is to compensate the prevailing party for the loss of use of money that rightfully belonged to it." Id. Thus, Eaton Vance was entitled to prejudgment interest, at the Massachusetts statutory rate, when the insurer paid the principal after the court's ruling on summary judgment motions, but before the judgment incorporating the ruling was entered. That result applies here where the summary judgment motion was filed but not contested as to these claims, the entry of judgment was inevitable and the payment was made in response to a supplemental complaint concerning the non-payment of amounts Liberty Mutual admitted it was required to pay.

Other courts agree that in order fully to satisfy a past-due debt, the interest that accrued on the principal must be included. "In order to constitute a valid tender and thus stop the running of interest, however, a defendant's settlement offer must include the full amount that the

5

plaintiff is entitled to receive plus all interest due to the date of the offer." Canady v. Crestar Mortgage Co., 109 F.3d 969, 975 (4th Cir. 1997). This is not a case, such as Protective Life Insurance Co. v. Dignity Viatical Settlement Partners, LLP, 171 F.3d 52, 54-55 (1st Cir. 1999), where an insurer that paid a disputed sum "promptly" after a claim was submitted to it and then sought a declaratory judgment as to its obligations was not liable for prejudgment interest. There the court of appeals noted that a different result would have applied "had Protective refused to pay Dignity's claim pending resolution of the declaratory judgment action". Here, Liberty Mutual paid nothing until four years after a summary judgment motion was filed, thus making the alternative scenario discussed in Protective Life more applicable.

      B.      An Award Of Lost Value Of Money Is Insufficient

In its August 25, 2004 Memorandum on Prejudgment Interest, the Court noted "[w]hile Liberty Mutual eventually reimbursed the defense costs, it did not timely fulfill that obligation for all of the bills submitted. That in itself constitutes a breach." It determined that the remedy "[f]or breach of the duty to timely pay the insured's bills, Black & Decker has a claim for pecuniary damages equal to the lost time value of money at reasonable market rates." Memorandum on Prejudgment Interest at 17.

A decision to award Black & Decker lost value of money, rather than pre-judgment interest, would not fully compensate Black & Decker for the breach found by the Court. In order to be made whole, the plaintiff is entitled to prejudgment interest on the incurred loss. Mill Pond Associates, Inc. v. E & B Giftware, Inc., 751 F. Supp. 299, 300 (D. Mass. 1990). It is "well understood" that prejudgment interest is designed to "compensate[] . . . for the loss of the use of money." Id. at 302 (citing Bernier v. Boston Edison Co., 380 Mass. 372, 388 (1980) (emphasis added)). In Bernier, Justice Kass also noted that the prevailing party was entitled to

the use of the money awarded, in the first place, and should not have been forced to "chase" after the money. Thus, the inclusion of prejudgment interest ensures that a damage award is "truly compensatory" and that, "in monetary terms, the winner is no less well off for the chase." Mill Pond, 751 F. Supp. at 302. Here, Black & Decker was obliged to "chase" after Liberty Mutual to recoup its damages and is entitled to the measure of compensation that the Massachusetts General Court determined to be appropriate. Indeed, when the General Court deemed the pre-judgment interest rate was not appropriate, it amended Mass. Gen. Laws c. 231, § 6C to serve the statutory purpose by changing the rate from 6% to 8% to 10% and finally to 12%. The belated payment does not purge Liberty Mutual of the consequences of a breach that arose years earlier when it failed to defend its insured. Black & Decker is entitled to an adjudication that Liberty Mutual was in breach of its obligations prior to the belated payments.

In its Memorandum on Prejudgment Interest, the Court indicated that the federal post-judgment interest rate, or "T-Bill" rate, is an appropriate remedy. Courts have recognized the economic reality that the T-Bill rate does not fully compensate a plaintiff for lost value of its money and that the prime rate is more appropriate. The T-Bill rate reflects the rate at which the federal government, not a corporation, borrows money. As summarized by another court:

> The T-Bill rate is lower than the prime rate in the private sector because the United States is almost certain to repay. That cannot be said of [defendant]; no one would make a long-term, voluntary loan to [defendant] at the T-Bill rate. [Plaintiff] has made an involuntary loan to [defendant], creating a debt some of which has been outstanding for more than a decade. The right rate of prejudgment interest in principle is the rate [plaintiff] paid for this money during the years in question. In default of this figure, courts regularly use the prime rate.

Grain Processing Corp. v. American Maize-Products Co., 893 F. Supp. 1386, 1396 (N.D. Ind. 1995), aff'd in part, vacated in part on other grounds, 108 F.3d 1392 (Fed. Cir. 1997).

In Stryker Corp. v. Intermedics Orthopedics, Inc., 891 F. Supp. 751, 833 (E.D.N.Y. 1995), aff'd, 96 F.3d 1409 (Fed. Cir. 1996), the court agreed that the T-Bill rate was not the appropriate rate to use, because of these very same concerns.  The court found that the T-Bill rate was the government borrowing rate, while "[c]orporations are more likely to borrow at the prime rate."  That court also found that the cost of borrowing money "provides a better measure of harm suffered as a result of the loss of the use of money over . . . time." Id. (citing Mars, Inc. v. Conlux U.S.A. Corp., 818 F. Supp. 707, 720-21 (D. Del.), aff'd without opinion, 16 F. 3d 421 (Fed. Cir. 1993).

The T-Bill rate does not adequately deter a defendant from keeping money it owes to the plaintiff.  The monies withheld could be invested at higher rates under typical market conditions, particularly by an insurer, and even if repaid with interest at the T-Bill rate, would result in a windfall profit for the defendant.  Limiting an interest award to the T-Bill rate might actually encourage an insurer to withhold payment and profit from the difference between the T-Bill rate and its rate of return.

      C.    The Massachusetts Prejudgment Interest Rate Applies To The Claims In Issue

Prior to the filing of the April, 2004 memoranda regarding prejudgment interest, there was a potential dispute regarding whether Massachusetts law or the law applicable to the construction of each of the five sets of insurance policies in issue was applicable to prejudgment interest issues.  As the Court noted in its Memorandum on Prejudgment Interest, both parties addressed the issue on the basis that Massachusetts law applied.  Those briefs were filed after the Court ruled that Massachusetts law applied to the USM and PCI policies, Connecticut law applied to the Farrel and MITE policies and Maryland law applied to the Black & Decker policies.  In those circumstances, it appears that, as the Court suggested, there was an implicit

8

agreement that Massachusetts law should apply to prejudgment interest issues concerning all of the claims. See, Memorandum on Prejudgment Interest at 6-7, n.3 (citing Mathewson Corp. v. Allied Mar. Indus., Inc., 827 F.2d 850, 853 n. 3 (1st Cir. 1987) (Courts are at liberty to accept parties "implicit concession" that Massachusetts law controls).  Given this concession by the parties, Massachusetts law should be applied to all of the claims at issue here, regardless of which state law would apply under the law of the case.  See Oman International Finance, Ltd. v. Hoiyong Gems Corp., 616 F. Supp. 351, 358 n.5 (D.R.I. 1985) ("There is no choice-of-law problem; the parties have briefed all state law questions in terms of Rhode Island's jurisprudence, so the court may accept the implicit concession that Rhode Island's substantive law governs in the premises.").

> D. Black & Decker Is Entitled To Recover Attorney's Fees Regarding The Claims Governed By Massachusetts Law.

Black & Decker is entitled to recover its attorney's fees for prosecuting this action, in which Liberty Mutual's duty to defend certain of the Five LTE Claims and the PAS/Medway Claims was established.  Based on the Court's choice of law ruling, Massachusetts law applies to the Abarca Bostik, Alwell Asbestos (certain policies) [4], Medway, PAS Fulton (certain policies), PAS Oswego (certain policies) and Pennsylvania Benzene claims.  Thus in accordance with Rubenstein v. Royal Insurance Co. of America, 429 Mass. 355 (1999) and this Court's August 25, 2004 Memorandum on Post-Trial Motions, fees and expenses in connection with those claims are recoverable.  Under the holding of Rubenstein, an insured that litigates the fees and expenses in prosecuting that action.  429 Mass. at 356-61.

---

[4] See Supplement to Status Report, filed October 19, 2004.  Several claims are asserted under both USM and Farrel policies, thus, under the choice of law rulings, Massachusetts law applies to the USM policies and Connecticut law applies to the Farrel policies.

Black & Decker, through its prosecution of this action, has established that Liberty Mutual had an uncontested duty to defend the Five LTE Claims and the PAS/Medway existence of the duty to defend, and prevails, is entitled to recover, at a minimum[5], the attorney's Claims. As a result, the fees and expenses that Black & Decker expended to establish that duty are recoverable from Liberty Mutual. These fees and expenses include not only those specifically related to establishing the duty to defend the Five LTE Claims and the PAS/Medway Claims, but also "an allocable portion of fees and expenses related to establishing the duty to defend that are not specific to any site but rather cut across the entire litigation." Memorandum on Post-Trial Motions at 37-38.

   E. **If Massachusetts Law Does Not Apply, The Connecticut Statutory Rate Should Be Applied To Certain Black & Decker Claims**.

If Massachusetts law is not applicable to prejudgment interest by implied consent of the parties, then, based on the choice of law rulings, Connecticut law applies to the Alwell Asbestos (certain policies), PAS Fulton (certain policies) and PAS Oswego (certain policies) claims. Prejudgment interest under Connecticut law is governed by Conn. Gen. Stat. § 37-3a, which provides: "[e]xcept as provided in sections 37-3b, 37-3c, and 52-192a,[6] interest at the rate of 10 percent a year, and no more, may be recovered and allowed in civil actions . . as damages for the detention of money after it becomes payable." This award is discretionary, and is "an equitable determination and a matter lying within the discretion of the trial court." Id.

---

[5] Black & Decker contends that <u>Rubenstein</u> also permits recovery of attorney's fees associated with establishing the duty to indemnify as it argued in connection with its motion for attorneys fees regarding the Bostik and Whitman sites.

[6] Sections 37-3b and 37-3c apply to actions involving negligence and condemnation, respectively, and do not apply here. Section 52-192a applies to cases in which the plaintiff has filed a written "offer of judgment" with the defendant and the defendant has been rejected.

"Wrongful" does not necessarily connote bad faith, but rather "wrongful means simply that the act is performed without the legal right to do so." Brookridge Funding Corp. v. Northwestern Human Services, Inc., 2004 WL 1897004 at *6 (D. Conn.) (quoting Ferrato v. Webster Bank, 789 A.2d 472 (Conn. App. Ct. 2002)).

In General Plasma, Inc. v. Reliance Ins. Co., 2000 WL 980010 (Conn. Super. Ct), the court awarded 10 percent prejudgment interest on an indemnity payment, as well as attorneys fees and expenses, after it determined that an insurer had "breached a comprehensive general liability policy issued to the plaintiff ... when it failed to defend and indemnify" the insured. Id. at *1. The court's reasoning is persuasive, and applies to Liberty Mutual:

> This court has already determined that Reliance's failure to defend and indemnify, as required by the comprehensive general liability policy, denied General Plasma its contractual benefit to a defense and full indemnification in [the underlying action]. Consequently, General Plasma was required to expend significant sums in defending and settling the [underlying] action. For the reasons articulated in the memorandum of decision, dated January 11, 2000 [granting summary judgment], this court holds that Reliance's conduct amounted to a wrongful withholding of General Plasma's money … and that, therefore, General Plasma is entitled to § 37-3a prejudgment and postjudgment interest on moneys it spent defending and settling the [underlying] action."

Id. at *5. See also City of West Haven v. Liberty Mutual Ins. Co., 1989 WL 190242 (D. Conn.) (prejudgment interest awarded to insured, after insurer wrongfully failed to defend).

F. If Massachusetts Law Does Not Apply, The Maryland Statutory Rate Should Be Applied To Certain Black & Decker Claims.

If Massachusetts law is not applicable to prejudgment interest by implied consent of the parties, then, based on the choice of law rulings, Maryland law applies to the Maritime Asbestos and Maritime Hearing Loss Claims. Under Maryland law, prejudgment interest is fixed at six percent, by the state constitution. Md. Const. Art. 3, § 57. As in Massachusetts, in

Maryland "the purpose of prejudgment interest is to compensate the aggrieved party for the loss of use of the principal liquidated sums found due it and the loss of income from such funds." Ver Brycke v. Ver Brycke, 2003 WL 1562292 (Md. App.) at *18 (citations omitted). Entitlement to prejudgment interest is left to the discretion of the fact finder, and takes into account equity, justice, and all of the circumstances. Id.

As an exception to the general rule, prejudgment interest is awarded as of right when "the obligation to pay and the amount due had become certain, definite and liquidated by a specific date prior to judgment so that the effect of the debtor's withholding payment was to deprive the creditor of a fixed amount as of a known date." Id. (quoting Buxton v. Buxton, 362 Md. 634, 656-57 (2001). This exception has similarly been said to apply only when the sums due were "certain, definite, and liquidated." Gordon v. Posner, 142 Md. App. 399, 438 (2002). Where there is a legitimate dispute as to the obligation to pay, even when the amount is liquidated and definite, the award of interest retains its discretionary nature. Id.

In this case, there was no dispute that Liberty Mutual was obliged to pay Black & Decker's defense costs, and as discussed supra, Liberty Mutual admitted as much. At the time those bills became due, they met the "certain, definite, and liquidated" standard. Liberty Mutual belatedly paid the bills in full after summary judgment motions were filed, thus conceding that the bills were "certain, definite and liquidated", as well as that it had a duty to pay the bills. Thus interest on those amounts is not discretionary under Maryland law, and Black & Decker is entitled to Maryland statutory prejudgment interest on the Maritimes Asbestos Claim and Maritime Hearing Loss Claims if the Court finds Maryland law applicable.

G.   Black & Decker Is Entitled To An Award Of Attorney's Fees
     In Connection With The Claims Governed By Connecticut Law

The Connecticut appellate courts have not decided whether an insured is entitled to recover attorney's fees incurred in declaratory judgment litigation with an insurer. Such fees were awarded in General Plasma, Inc. v. Reliance Ins. Co., 2000 WL 72811 (Conn. Super. Jan. 11, 2000). The court noted that Missionaries of the Company of Mary, Inc. v. Aetna Casualty and Surety Co., 230 A.2d 21, 24-26 (Conn. 1967), held that "reason dictates that the defendant should reimburse the plaintiff for the full amount of the obligation reasonably incurred by it." 2000 WL 72811, at *6 (quoting Missionaries, 230 A.2d at 26). The General Plasma court reasoned that "[s]ince the expenses incurred in a subsequent action to enforce the underlying contractual obligation also appear to be 'reasonably incurred,' under all the circumstances, Reliance should reimburse General Plasma for its legal expenses incurred in the instant action." Id. The court quoted with approval opinions from other jurisdictions (including Preferred Mutual Ins. Co. v. Gamache, 426 Mass. 93 (1997)), and concluded that "[t]he present action is not a case in which the insurer fulfilled its duty to defend and then contested coverage. Reliance refused to defend and indemnify General Plasma in violation of the clear and unambiguous language of the policy. Because the court has found that Reliance breached its duty to defend and indemnify General Plasma, it must now bear the consequences of its decision. Therefore, General Plasma is entitled to recover reasonable attorneys fees and costs incurred in this action." Id. at 7. See also Aetna Life & Cas. Co. v. Gentile, 1995 WL 779102 (Conn. Super. Ct. Dec. 12, 1995), holding that the insured was entitled to reimbursement of reasonable fees and costs incurred in defending against the declaratory judgment action brought by the insurer. While

other another lower court in Connecticut has held to the contrary[7], the reasoning in General Plasma is consistent with the rule of Missionaries.

## CONCLUSION

For all the foregoing reasons, Black & Decker's Motion for an Award of Prejudgment Interest Regarding Abarca Bostik, Alwell Asbestos, Maritime Asbestos, Maritime Hearing Loss, Pennsylvania Benzene, Medway, PAS Fulton and PAS Oswego should be granted and Black & Decker's Motion for an Award of Attorney's Fees Regarding Abarca Bostik, Alwell Asbestos, Pennsylvania Benzene, Medway, PAS Fulton and PAS Oswego should also be granted.

Respectfully submitted,

/s/ Jack R. Pirozzolo
Jack R. Pirozzolo BBO# 400400
Richard L. Binder BBO# 043240
Willcox, Pirozzolo & McCarthy
Professional Corporation
50 Federal Street
Boston, Massachusetts 02110
(617) 482-5470

Dated:  November 2, 2004

---

[7]  Buell Industries, Inc. v. Greater New York Mutual Ins. Co., 1999 WL 566969 (Conn. Super. Ct. Jul. 21, 1999).